John Mackay, Esq. (06923)
Ray Quinney & Nebeker, P.C.
36 South State Street, Suite 1400
Salt Lake City, Utah 84111
Telephone: (801) 323-3341
jmackay@RQN.com

Kevin D. Quigley *(admitted pro hac vice)*
Brian A. Howe *(admitted pro hac vice)*
James A. Ryan *(admitted pro hac vice)*
Quarles & Brady, LLP
One Renaissance Square
Two North Central Avenue
Phoenix, AZ  85004
Kevin.quigley@quarles.com
Brian.howe@quarles.com
James.ryan@quarles.com

*Attorneys for Defendants ViSalus, Inc.,*
*Nicholas Sarnicola and Blake Mallen*

---

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| OCEAN AVENUE, a Wyoming limited liability company, KENN DUNN, and individual, and FRED NINOW, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> VISALUS INC., a Delaware corporation, NICHOLAS SARNICOLA, an individual, and BLAKE MALLEN, an individual, NATE MOSER, an individual, PETER SIRAGUSI, an individual, MOSER & ASSOCIATES,  a California corporation, and John Does, I-XX, <br><br> Defendants. | **MOTION TO DISMISS CLAIMS AGAINST VISALUS, MALLEN AND SARNICOLA** <br><br><br><br> Case No. 2:13-cv-00988 - DBP |

## TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................ 1

II. ARGUMENT ..................................................................................................... 6

    A.   Legal Standard ......................................................................................... 6

    B.   The Complaint Fails To State A Claim For Federal Or State Wiretapping (Counts One and Two). ........................................................................... 6

        1.     The federal claim is fatally flawed. ........................................... 6

            a. There is no secondary liability under 18 U.S.C. § 2520. ...................... 7

            b. Plaintiffs have not stated a claim against the ViSalus Defendants for primary liability. .......................................................... 9

                i.   Plaintiffs fail to properly allege "interception." ........................... 9

                ii.  The Complaint does not plausibly allege knowledge. .............. 13

        2.     Plaintiffs' state wiretapping claim fails for the same reasons. .............. 13

    C.   The Complaint Fails To Allege Actionable Civil Racketeering Claims Under Federal or Utah Law (Counts Three, Four, Five, Six and Twelve). ........................ 14

        1.     Plaintiffs fail to plead a pattern of racketeering activity for which they have standing to sue under 18 U.S.C. § 1964(c). ........................... 14

        2.     Plaintiffs' failure to plead actionable claims under RICO section 1962(c) defeats their RICO conspiracy claims under section 1962(d). . 19

        3.     Plaintiffs provide no facts demonstrating a plausible claim under the Utah Pattern Of Unlawful Activity Act. ........................................... 20

    D.   The Complaint Fails to State a Claim Under the Utah Unfair Competition Act (Count Seven). ......................................................................................... 20

        1.     Plaintiffs fail to adequately allege "material diminution in value of intellectual property." ................................................................. 20

        2.     Plaintiffs fail to allege sufficient facts to state a claim based on vicarious liability. ...................................................................... 21

    E.   The Complaint Fails to State a Claim Under the Utah Truth In Advertising Act (Count Nine). ......................................................................................... 23

    F.   The Complaint Fails to State a Claim Against the ViSalus Defendants for Trespass, Conversion and Theft (Count Ten). .......................................... 24

    G.   The Complaint Fails to State a Claim Against the ViSalus Defendants for Defamation (Counts Thirteen and Sixteen). ............................................. 25

    H.   The Complaint Fails to State a Claim Against the ViSalus Defendants for Civil Conspiracy (Counts Eleven, Fourteen and Seventeen). ................................. 28

        1.     Count Eleven must be dismissed. ......................................... 28

        2.     Counts Fourteen and Seventeen must be dismissed. ............................. 30

       I.      The Complaint Fails to State a Claim for Tortious Interference with Contractual and Business Relations (Count Fifteen). ............................................... 30

       J.      The Complaint Fails to State a Claim Under the Utah Unfair Practices Act (Count Eighteen). ................................................................................................. 31

III.  CONCLUSION ........................................................................................................ 32

## TABLE OF AUTHORITIES

**Cases**

*Allbright v. Attorney's Title Ins. Fund*,
    504 F. Supp. 2d 1187 (D. Utah 2007) ..................................................................... 19

*Antillon v. Dep't of Employment Sec.*,
    688 P.2d 455 (Utah 1984) ...................................................................................... 14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................. 6, 20, 27

*Baum v. Gillman*,
    667 P.2d 41 (Utah 1983) ........................................................................................ 28

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................................. 6, 27, 30

*Blackmore v. Wachovia Mortgage Corp.*,
    2:12-CV-250-DN, 2013 WL 504388 (D. Utah Feb. 8, 2013) .................................. 23

*Brixen & Christopher Architects, P.C. v. State*,
    29 P.3d 650 (Utah Ct. App. 2001) ........................................................................ 14

*Candelaria v. BC Gen. Contractors, Inc.*,
    600 N.W.2d 348 (Mich. Ct. App. 1999) ................................................................ 22

*Computerized Thermal Imaging, Inc. v. Bloomberg, L.P.*,
    312 F.3d 1292 (10th Cir. 2002) ............................................................................ 25

*Cook v. Zions First Nat'l Bank*,
    645 F. Supp. 423 (D. Utah 1986) .......................................................................... 16

*Council on Am.-Islamic Relations Action Network, Inc. v. Gaubatz*,
    891 F. Supp. 2d 13 (D.D.C. 2012) ................................................................ 8, 9, 28

*Deck v. Engineered Laminates*,
    349 F.3d 1253 (10th Cir. 2003) ............................................................................ 17

*Farm Bureau Life Insurance Co. v. American National Insurance Co.*,
    505 F. Supp. 2d 1178 (D. Utah 2007) .............................................................. 25, 27

*Fisher v. Townsends, Inc.*,
    695 A.2d 53 (Del. 1997) ........................................................................................ 22

*Gillmor v. Thomas*,
    490 F.3d 791 (10th Cir. 2007) .............................................................................. 17

iv

*Gonzalez v. Russell Sorensen Const.*,
   279 P.3d 422 (Utah Ct. App. 2012) ..................................................... 22, 23, 24, 26

*Hamm v. Rhone-Poulenc Rorer Pharm., Inc.*,
   187 F.3d 941 (8th Cir. 1999) ................................................................. 18

*Hemi Group, LLC v. City of New York*,
   559 U.S. 1 (2010) ................................................................................. 18

*Holmes v. Securities Investor Protection Corp.*,
   503 U.S. 258 (1992) ............................................................................. 18

*Ironworkers Local Union 68 v. AstraZeneca Pharm., LP*,
   634 F.3d 1352 (11th Cir. 2011) ............................................................ 18

*Israel Pagan Estate v. Cannon*,
   746 P.2d 785 (Utah Ct. App. 1987) .................................................. 29, 30

*Ivar v. Elk River Partners, LLC*,
   705 F. Supp. 2d 1220 (D. Colo. 2010) ................................................. 17

*Kirch v. Embarq Mgmt. Co.*,
   702 F.3d 1245 (10th Cir. 2012) ......................................................... 8, 28

*Konop v. Hawaiian Airlines, Inc.*,
   302 F.3d 868 (9th Cir. 2002) ............................................................ 10, 11

*Leigh Furniture & Carpet Co. v. Isom*,
   657 P.2d 293 (Utah 1982) ................................................................ 29, 31

*Lynn v. Superior Court*,
   225 Cal. Rptr. 427 (Ct. App. 1986) ...................................................... 22

*Margae, Inc. v. Clear Link Technologies, LLC*,
   620 F. Supp. 2d 1284 (D. Utah 2009) .................................................... 6

*Marks v. City of Seattle*,
   No. C03–1701, 2003 WL 23024522 (W.D. Wash. Oct. 16, 2003) ........... 15

*Marlow v. Allianz Life Ins. Co. of North America*,
   No. 08–CV–00752–CMA–MJW, 2009 WL 1328636 (D. Colo. May 12, 2009) ..................... 19

*Mayfield SWD, LLC v. Blevins*,
   No. CIV–10–0467–HE, 2011 WL 195656 (W.D. Okla. Jan. 19, 2011) ................... 19

*Overstock.com, Inc. v. SmartBargains, Inc.*,
    192 P.3d 858 (Utah 2008) ........................................................................... 29

*Price v. Smith's Food & Drug Centers, Inc.*,
    252 P.3d 365 (Utah Ct. App. 2011) ..................................................... 22, 23, 24, 26

*Proctor & Gamble Co. v. Haugen*,
    947 F. Supp. 1551 (D. Utah 1996) ............................................................. 24

*Puttuck v. Gendron*,
    199 P.3d 971 (Utah Ct. App. 2008) ........................................................ 28, 30

*Rich Media Club, LLC v. Mentchoukov*,
    No. 2:11-CV-1202 TS, 2012 WL 1119505 (D. Utah April 3, 2012) ...................................... 21

*Sedima S.P.R.L. v. Imrex Co.*,
    473 U.S. 479 (1985) ............................................................................ 15

*Skipprint, LLC v. Rastar, Inc.*,
    No. 2:13–CV–00039, 2013 WL 4430873 (D. Utah Aug. 16, 2013) ........................................ 13

*St. Benedict's Dev. Co. v. St. Benedict's Hosp.*,
    811 P.2d 194 (Utah 1991) ...................................................................... 29

*Stern v. Charles Schwab & Co., Inc.*,
    No. CV–09–1229–PHX–DGC, 2010 WL 1250732 (D. Ariz. Mar. 24, 2010) ..................... 13

*Steve Jackson Games, Inc. v. United States Secret Serv.*,
    36 F.3d 457 (5th Cir. 1994) ............................................................ 10, 11

*Szuminski v. Provo Steel & Supply Co.*,
    No. 040402260, 2005 WL 5958007 (D. Utah Feb. 22, 2005) ................................. 24

*Tal v. Hogan*,
    453 F.3d 1244 (10th Cir. 2006) ......................................................... 15, 19

*Unified Container, LLC v. Mazuma Capital Corp.*,
    280 F.R.D. 632 (D. Utah 2012) ................................................................. 29

*United States v. Jones*,
    364 F. Supp. 2d 1303 (D. Utah 2005) ........................................................... 10

*United States v. Steiger*,
    318 F.3d 1039 (11th Cir. 2003) ..................................................... 9, 10, 11, 13

*Valentine v. WideOpen W. Fin., LLC,*
    288 F.R.D. 407 (N.D. Ill 2012) ............................................................................ 12


**Statutes**

18 U.S.C. § 1341 ........................................................................................................ 16
18 U.S.C. § 1343 ........................................................................................................ 16
18 U.S.C. § 1961 ........................................................................................... 14, 15, 16
18 U.S.C. § 1962 ........................................................................................... 14,15, 19
18 U.S.C. § 1964 ........................................................................................................ 15
18 U.S.C. § 2510 ................................................................................................... 7, 10
18 U.S.C. § 2511 ............................................................................................. 9, 10, 16
18 U.S.C. § 2520 ............................................................................. 7, 9, 10, 12, 13
Utah Code Ann. § 13-11a-4(2)(a) ........................................................................ 23, 24
Utah Code Ann. § 13-5-3 ........................................................................................... 31
Utah Code Ann. § 13-5a-102. ..................................................................... 15, 20, 21
Utah Code Ann. § 13-15-1 ................................................................................... 5, 31
Utah Code Ann. § 76-10-1601 ............................................................................ 14, 20
Utah Code Ann. § 76-10-1603 ............................................................................ 19, 20
Utah Code Ann. § 77-23a-4 ................................................................................ 15, 16


**Other Authorities**

Webster's Ninth New Collegiate Dictionary 630 (1985) ........................................... 10

## MOTION

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants ViSalus, Inc. ("ViSalus"), Blake Mallen and Nick Sarnicola hereby move to dismiss Counts One through Seven and Nine through Eighteen of Plaintiffs' Complaint for failure to state a claim.

## MEMORANDUM

## I.   INTRODUCTION[1]

ViSalus is a very successful marketer and seller of effective weight-loss products, functional foods, and nutritional supplements.  ViSalus markets its products using a direct-selling model, which avoids traditional retail outlets and makes sales direct to consumers as well as through its network of independent distributors (called "Promoters" in the ViSalus network). Because the distribution network is the principal means of identifying potential customers, that network is critical to any direct-selling business.  For this reason, ViSalus – like virtually all other competent and legitimate direct sales companies – includes standard provisions in its contracts with its Promoters that prevent those who choose to leave ViSalus for another direct-selling company from recruiting, for a reasonable period of time, other ViSalus Promoters to join them.  These provisions reflect the legitimate interests of direct selling companies from further damage when a distributor, who has received the benefit of substantial knowledge and training at considerable time and expense to the company (and other distributors), decides to resign and go work with another company in the industry.

ViSalus operates in an extremely competitive industry, in which corporate integrity and reputation are highly prized and jealously guarded.  That industry, however, is always expanding, with new direct-selling companies constantly being formed – all of whom are hungry

---

[1] ViSalus, Mr. Mallen and Mr. Sarnicola submit this Motion and Memorandum pursuant to the Order Granting Stipulated Motion For Leave to File Overlength Motion to Dismiss.  (Dkt. # 17).

for distributors.  Some of these companies build their own distributor networks based on the quality of their products and their compensation plan.  But others resort to the more expedient method of raiding distributors from established companies, by recruiting away top distributors and then encouraging and helping those distributors recruit away others.  When that occurs, the target of the illegal raiding must take steps to enforce the restrictions in its distributor contracts.

Plaintiff Ocean Avenue, LLC ("Ocean Avenue") is a start-up direct sales company that is very hungry for distributors.  Like ViSalus, Ocean Avenue also markets weight-loss products and nutritional supplements.  The company was founded by Plaintiffs Fred Ninow and Ken Dunn (collectively, with Ocean Avenue, "Plaintiffs"), both of whom have a history of jumping from one direct-selling business to another and allegedly encouraging illegal distributor raiding along the way.  That is exactly what happened here with respect to the ViSalus Promoter network.  ViSalus Promoters began leaving the company, joined Ocean Avenue, and then – with the support and encouragement of Plaintiffs – attempted to recruit more ViSalus Promoters to follow them.  ViSalus had the temerity to enforce its restrictive covenants against certain of its former Promoters only after repeated violations caused substantial damage to ViSalus and its Promoter network.  Now Plaintiffs attempt to strike back at ViSalus through the filing of this lawsuit.

Unfortunately, Plaintiffs' actions follow a now-familiar pattern in civil litigation.  A and B are competitors.  A believes that B has engaged in conduct that is tortious, such as B making derogatory remarks about A or A's products.  Rather than simply filing a targeted, one or two-count complaint, A instead instructs its counsel to prepare a lawsuit containing as many claims as can conceivably be included.  Ignoring well-accepted principles of corporate law, A names individual officers of B as defendants, and to achieve maximum in terrorem effect, A bases its claims in part upon alleged <u>criminal</u> acts by B – including, of course, the often inappropriately

used RICO claim, the 800-pound gorilla of civil litigation.  To inflict damage on B beyond the courtroom, A orchestrates publicity around the lawsuit – either a press release or a social media campaign.  After spending hundreds of thousands of dollars in legal fees, B is able to get the complaint dismissed in whole or in part because most of the claims cannot withstand even superficial scrutiny.  The damage, however, has been done.  A has harmed B's reputation and created uncertainty regarding B within B's own distribution network, the direct sales industry, and the public at large.

Plaintiffs' Complaint is a textbook example of this practice.  It is 60-pages long and contains a mind-numbing *18* counts, many of which are duplicative of one another.  It names not only ViSalus but also ViSalus's Chief Marketing Officer, Blake Mallen, as well as one of ViSalus's founders and independent Promoters, Nick Sarnicola (collectively, the "Visalus Defendants"), and contains accusations directed at many other ViSalus Promoters who are not even named as defendants.  It is replete with fantastic allegations of criminal wrongdoing – corporate espionage, wiretapping, computer hacking, cyber-terrorism, extortion, racketeering, theft, etc. – all of which are ostensibly the product of various shadowy criminal enterprises and conspiracies involving persons as far away as India, with ViSalus (and its officers and certain Promoters) at the center.  It contains not one but *nine* different counts premised on alleged criminal activity – including four federal RICO claims and one claim under Utah's analogue to federal RICO.  And, of course, the filing of this lawsuit was quickly picked up and hyped on various social media sites:  On the day after this lawsuit was filed and well before it was served on the ViSalus Defendants, Plaintiffs apparently provided it to a paid third-party advisor who promptly recited the laundry list of claims with feigned shock and dismay on a You Tube video.

As with many of these types of complaints, the one filed by Ocean Avenue is lacking in numerous respects.  The ViSalus Defendants demonstrate below that 17 of the 18 counts in Plaintiffs' Complaint should be dismissed for failure to state a claim.[2]  Plaintiffs have ignored essential elements of claims, pleaded them in only a conclusory manner, disregarded statutory prerequisites, and overlooked clear obstacles to recovery.  In many cases, Plaintiffs have no standing, because they are attempting to recover for harms allegedly inflicted on third parties.  Plaintiffs also employ an indolent pleading style:  All six Defendants are named in all eighteen counts, but Plaintiffs lump all Defendants together and make no effort to identify which Defendant engaged in which wrongful act.  Throughout the complaint, allegations are directed only at "Defendants".

Even worse, Plaintiffs apparently did not even take the time to proofread the Complaint before filing it.  Plaintiffs repeatedly identify, as plaintiffs, a number of current Ocean Avenue distributors (and former ViSalus Promoters) who are not actually plaintiffs in this case.  (Compl., ¶ 196 ("Plaintiffs Ms. Then, Mr. Then, Ms. Nile, Mr. Knox, Ms. Van Etten and Ms. Bohn . . ."); *id.* ¶ 260 (same); *id.* ¶ 270 (same); *id.* ¶ 275 (alleging that "Ms. Then, Mr. Then, and Ms. Nile have all suffered damages . . .")).  Perhaps Plaintiffs are mistakenly referring to these individuals as plaintiffs in the current case because these distributors are defendants in the cases that ViSalus filed for breach of the restrictive covenants described above, and Plaintiffs are merely using this case, among other things, as a means of pressuring ViSalus into dropping those cases.  (Filing a counterclaim in those cases would have been time-barred, which is also why Plaintiffs circumvented those rules by filing this lawsuit).  Plaintiffs' Lanham Act claim is obviously cut-

---

[2] The one claim that ViSalus is not moving to dismiss is Count Eight (false advertising under the Lanham Act).  Although ViSalus believes that this claim lacks any merit, ViSalus concedes that – based on the Lanham Act decisions in the District of Utah – Plaintiffs have included the bare minimum needed to state a claim.

and-pasted from a different lawsuit, as it includes an allegation that acts of "unfair competition, false or misleading descriptions of fact, and/or false or misleading representation[s] of fact have been made **by Technip** in commercial advertising" (Compl., ¶ 233). Whatever "Technip" is, it is not a party to, and has nothing to do with, this case. And Count Eighteen is titled "Utah Practices Act – Violation of Utah Code Ann. §§ 13-15-1 et seq." (Compl. at 58). It is not clear what claim Plaintiffs sought to bring, but the Utah **Unfair** Practices Act, codified at Utah Code § 13-**5**-1 *et seq.*, is a price discrimination law designed to prevent the creation of monopolies. (There is not a single allegation about price discrimination in the Complaint). Section 13-**15**-1 is an entirely different statute – the Business Opportunity Disclosure Act – which creates no private right of action and can only be enforced by the Utah Attorney General.

These deficiencies raise troubling questions about Plaintiffs' motives and the good faith basis of their claims. For a relatively small cost, a group of plaintiffs can easily instruct attorneys to prepare a complaint like this one, which can be quickly assembled, filed, and "pushed" in social media. As deficient as this lawsuit is, however, it already has inflicted harm on ViSalus, a fact likely not lost on Plaintiffs. The intentional distribution of the Complaint through social media and other public channels has caused concern and disruption in ViSalus's distributor network. ViSalus has spent, and will continue to spend, hundreds of thousands of dollars in legal fees fighting an unwarranted and unjustified lawsuit in addition to more than a million dollars that ViSalus has been forced to spend to date in its lawsuits against Ocean Avenue and its distributors for breach of restrictive covenants. And if this motion is not successful, ViSalus will be forced to duplicate that spending again in discovery and subsequent litigation. ViSalus requests that the Court stop this train in its tracks, and dismiss the claims with prejudice for the reasons of law set forth below.

II.   **ARGUMENT**

A.   **Legal Standard**

To state a claim for relief, a complaint must contain "well-pleaded factual allegations" that plausibly demonstrate an entitlement to relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678  (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   Allegations are plausible only when they allow the court "[t]o draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*; *Margae, Inc. v. Clear Link Technologies, LLC*, 620 F. Supp. 2d 1284, 1284 (D. Utah 2009).   To survive a motion to dismiss, the factual allegations in the complaint must be sufficient to "[r]aise the right of relief above the speculative level." *Twombly*, 550 U.S. at 555.

B.   **The Complaint Fails To State A Claim For Federal Or State Wiretapping (Counts One and Two).**

1.   **The Federal claim is fatally flawed.**

Plaintiffs' federal wiretapping claim suffers from several deficiencies.   First, the Complaint seeks to hold the ViSalus Defendants responsible not for their own acts but for the acts of others.   There is, however, no secondary liability under 18 U.S.C. § 2520 (i.e., there is no liability for procuring another person to intercept oral or electronic communications).   This claim should be dismissed for that reason alone.   Second, to the extent the Complaint can be read to allege primary liability, it fails to (a) identify the wrongful acts committed by these defendants; (b) allege that an oral or electronic communication actually was "intercepted"; and (c) allege facts indicating that the ViSalus Defendants knew that any information used or disclosed by them had been unlawfully intercepted.

### a.      There is no secondary liability under 18 U.S.C. § 2520.

Plaintiffs' claim fails as an initial matter because there are no allegations that the ViSalus Defendants were directly responsible for any of the allegedly wrongful acts – i.e., that Mr. Mallen or Mr. Sarnicola (or any other ViSalus officer) personally intercepted any communications or hacked into the social media accounts, e-mail accounts, personal websites, and cell phones of Ocean Avenue or its officers.  Almost all of the allegations are that the ViSalus Defendants procured *others* to hack into, access, or intercept the accounts of various Ocean Avenue personnel.  Such allegations are insufficient as a matter of law to state a claim under the Electronic Communications Privacy Act of 1986 ("ECPA" or "Federal Wiretap Act"), 18 U.S.C. §§ 2510-2522.  Although the ECPA does create a cause of action for "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of the [Act]," the cause of action exists only against the "person or entity . . . which engaged in that violation."  *Id.* § 2520(a).  As the Tenth Circuit and other courts have indicated, there is no cause of action for procurement liability, or any other form of secondary liability (e.g., conspiracy or aiding and abetting) under the ECPA:

> The ECPA imposes civil liability on those who unlawfully intercept electronic communications. . . .  [The statutory] language does not encompass aiders or abettors.  The only persons liable are those who engaged in "that violation."  And the natural reading of "that violation" is the intercept[ion], disclos[ure], or intentional[] use[] . . . in violation of [the statute]."  In other words, "the person or entity . . . which engaged in that violation" is the person or entity that "intercepted, disclosed, or intentionally used" the communication.  *The provision includes no aiding-and-abetting language.*
>
> *              *              *
>
> *Accordingly, almost all courts to address the issue have held that § 2520 does not impose civil liability on aiders or abettors.*

*See Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245, 1246-47 (10th Cir. 2012) (emphasis added) (affirming summary judgment); *see also Council on Am.-Islamic Relations Action Network, Inc. v. Gaubatz*, 891 F. Supp. 2d 13, 23-24 (D.D.C. 2012) (dismissing Federal Wiretap claims premised on theories of procurement liability and secondary liability (e.g., conspiracy or aiding and abetting)).

Yet the Complaint repeatedly purports to impose procurement or secondary liability on the ViSalus Defendants for the acts of others – primarily, for the alleged acts of the private investigation firm of Moser & Associates ("P.I. Firm"). For example, Plaintiffs allege that the P.I. Firm acted "at the direction of ViSalus and Nic Sarnicola" in accessing email accounts of Plaintiffs Dunn and Ninow (Compl., ¶ 33); that the P.I. Firm "hired by ViSalus" placed "key logging devices" and/or gained remote access to Plaintiffs' computers (*id.* ¶ 44); and that the P.I. Firm "hired by ViSalus" intercepted or attempted to intercept communications of Ocean Avenue and access stored communications on Ocean Avenue computers, cell phones, personal e-mail accounts, and private Ocean Avenue website pages, and social media accounts (*id.* ¶ 43). (*See also id.* ¶ 42 ("ViSalus obtained and procured this information *via the P.I. Firm*"); *id.* ¶ 45 ("communications intercepted and/or accessed by the PI firm were then disclosed and provided to Visalus at the direction of Nic Sarnicola and Visalus"); *id.* ¶ 49 ("Mr. Moser stole the computer to further his attempts on behalf of Visalus and Nic Sarnicola to access and intercept communications and data from Ocean Avenue's server and computer system"); *id.* ¶ 53 ("Moser informed the U.S. Hacker that Visalus and Nic Sarnicola had hired Moser to obtain information about Ocean Avenue, its owners, and distributors"); *id.* ¶ 54 ("Moser informed the U.S. Hacker that he had been hired in the past by Visalus and Nic Sarnicola to . . . obtain information they could use to extort, threaten, or harm Dunn's personal and business reputation"). Because there

is no cause of action for procurement or secondary liability, none of these allegations is sufficient to state a claim against the ViSalus Defendants.  Only the actual perpetrator of the interception can be liable.  *See Gaubatz*, 891 F. Supp. 2d at 94.

>   **b.    Plaintiffs have not stated a claim against the ViSalus Defendants for primary liability.**

Plaintiffs' Complaint also fails to demonstrate any basis for imposing primary liability against the ViSalus Defendants.  For starters, Plaintiffs do not specify what each of the three ViSalus Defendants supposedly has done that would constitute a primary violation.  Instead, Plaintiffs simply reproduce large portions of 18 U.S.C. § 2511 verbatim and summarily assert that "Defendants" violated the statute and that Plaintiffs have been damaged as a result.  (*See* Compl., ¶¶ 183-84).  The "supporting" factual allegations are no better.  Mallen, for example, is not alleged to have done anything more than hire a private investigator and made a statement that he would "go after" Ocean Avenue and "put them out of business or seriously injure" their operations.  (*See id.* ¶¶ 28, 36).  Even if true (which they are certainly not), those acts do not create liability under Section 2511; they do not show plausibly that Mallen participated in the interception of any oral or electronic communication.  Indeed, the Complaint does not even contain a conclusory assertion that Mallen directly engaged in any interception.

>   **i.    Plaintiffs fail to properly allege "interception."**

Plaintiffs' primary liability theory is flawed for additional reasons.  First, there can be no private, civil cause of action under 18 U.S.C. § 2520 unless an "interception" – as defined under the Federal Wiretap Act – has first occurred.  *See* 18 U.S.C. § 2520; 18 U.S.C. § 2511; *see also United States v. Steiger*, 318 F.3d 1039, 1046 (11th Cir. 2003) (stating that the Wiretap Act "denounces certain 'interceptions'").  Stated differently, all civil liability is tied to an unlawful interception of wire, oral, or electronic communications.  *See Steiger*, 318 F.3d at 1046.  If no

interception occurred, any civil claim brought under the Federal Wiretap Act necessarily fails. *Id.* Many of the allegedly wrongful acts identified in Plaintiffs' Complaint do not constitute "interception" under 18 U.S.C. § 2511 and therefore cannot give rise to civil liability under 18 U.S.C. § 2520.

The definition of "interception" has been thoroughly litigated, and it is very specific and narrow. "Interception" is "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." *Steiger*, 318 F.3d at 1047 (11th Cir. 2003) (citing 18 U.S.C. § 2510(4)). Critically, "[t]he [courts] which have interpreted this definition as applied to electronic communications have held that it encompasses only *acquisitions contemporaneous with transmission*." *Steiger*, 318 F.3d at 1047 (emphasis added); *United States v. Jones*, 364 F. Supp. 2d 1303, 1305 (D. Utah 2005); *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878-89 (9th Cir. 2002); *Steve Jackson Games, Inc. v. United States Secret Serv.*, 36 F.3d 457 (5th Cir. 1994). These courts have made clear that an individual does not "intercept" an electronic communication under the Federal Wiretap Act merely by acquiring its contents from a server, a website, an e-mail inbox, or any other form of electronic storage. *See Steiger*, 318 F.3d at 1049-1050; *Konop*, 302 F.3d at 876-77. Rather, for information or communications on a private website, e-mail, social media account, or other electronic medium "to be intercepted in violation of the Wiretap Act, [they] must be *acquired during transmission, not while . . . in electronic storage.* This conclusion is consistent with the ordinary meaning of 'intercept,' which is 'to stop, seize, or interrupt in progress or course before arrival.'" *See Konop*, 302 F.3d at 878-89 (citing Webster's Ninth New Collegiate Dictionary 630 (1985)) (emphasis added).

In *Steiger*, for example, a "computer hacker" used a "Trojan Horse program . . . to enter into Steiger's computer via the Internet and find [certain, incriminating] images and . . . information." 318 F.3d at 1044. The hacker then sent the images and information he had obtained from Steiger's computer to the police. *Id.* The Eleventh Circuit concluded that no interception occurred because of the requirement of "acquisition[] contemporaneous with transmission": "[T]he Trojan Horse virus . . . enabled [the hacker] to access and download information *stored on Steiger's personal computer*," rather than while they were "*in flight*." *Id.* at 1046, 1050 (emphasis added). Similarly, in *Konop* the Ninth Circuit held that using the Internet to view a private website without authorization does not constitute an interception of electronic communications in violation of the Wiretap Act because such unauthorized viewing merely provides access *to stored electronic communications*. 302 F.3d at 879 (emphasis added). And in *Steve Jackson Games*, the Fifth Circuit rejected an argument that seizure of a computer used to operate an electronic bulletin board system constituted an interception of the stored but unread email contained on that system, reasoning that e-mail stored on the hard drive *was no longer in transmission* and thus could not be intercepted within the meaning of the Federal Wiretap Act. *See* 36 F.3d at 461 (emphasis added).

The types of "hacking", "accessing", and "intercepting" purportedly undertaken by the P.I. Firm in this case are precisely the types of actions that the Fifth, Ninth, and Eleventh Circuits concluded were not "interceptions" under the Federal Wiretap Act. There are no allegations in the Complaint that any electronic communications were intercepted *contemporaneously with their transmission*. Rather, the principal allegations in the Complaint are that e-mail accounts, private websites, social media sites, and computers with stored documents were "hacked" or "accessed". (*See, e.g.*, Compl., ¶ 33 (e-mail accounts "access[ed]"); *id.* ¶ 37 (Gmail and

Facebook accounts "hacked and accessed"); *id.* ¶ 42 (Ocean Avenue private webpages "accessed"); id. ¶ 43 (allegation that the P.I. Firm "accessed *stored* communications and documents"); *id.* ¶ 47 (allegation that Defendant Moser stole computer from Ocean Avenue office)).  Information and/or communications allegedly obtained in these instances were taken from electronic storage, rather than while the information was "in-flight."  Such conduct does not constitute an interception and therefore cannot support a Federal Wiretap Act claim.

At certain places in the Complaint, Plaintiffs do use the word "intercept", presumably in a token effort to bring their claim within statute.  (*See, e.g.*, Compl., ¶ 43 (P.I. Firm "intercepted . . . communications"); *id.* ¶ 45 ("communications intercepted")).   Although these conclusory assertions "may contain the proper buzzwords, they are mere legal conclusions that do not count as factual allegations" to satisfy the plausibility standards of *Iqbal* and *Twombly*.  *See, e.g.*, *Valentine v. WideOpen W. Fin., LLC*, 288 F.R.D. 407, 411 (N.D. Ill 2012) (involving Federal Wiretap Act claim).  There are no supporting factual allegations detailing what communications actually were intercepted, when the interception occurred, etc.  In other places, Plaintiffs only *suggest* that an interception occurred, such as where they allege that the P.I. Firm placed "key logging devices" on computers belonging to Defendants Dunn and Ninow.  (*See* Compl., ¶ 44; *see also id.* ¶ 57 (P.I. Firm hired hacker so Firm "could" access and intercept communications but not alleging that any interceptions occurred)).   *Twombly* and *Iqbal* require more.  Finally, Plaintiffs also cannot rely on "attempts" to intercept.  (*See* Compl., ¶ 43 ("attempted to intercept communications"); *id.* ¶ 49 ("further his attempts . . . to access and intercept communications")).  The plain language of the Federal Wiretap Act creates no liability or private cause of action for "attempted interception."  *See* 18 U.S.C. § 2520.

### ii.    The Complaint does not plausibly allege knowledge.

Because Plaintiffs have failed to adequately allege that an "interception" of electronic communications occurred, any remaining allegations that could be read to support the Federal Wiretap Act Claim against the ViSalus Defendants can be dispatched easily.  For example, any suggestion that ViSalus, Sarnicola, or Mallen "used" or "disclosed" information obtained from the P.I. Firm (*see, e.g.*, Compl., ¶¶ 46) cannot support this claim.  Although primary liability can be imposed on a person who uses or discloses information unlawfully intercepted, such liability necessarily requires that an "interception" have occurred in the first instance.  *See* 18 U.S.C. §§ 2511, 2520; *see also Steiger*, 318 F.3d at 1046.  Here, there are insufficient allegations of any interception.  Furthermore, even if Plaintiffs had adequately pleaded an interception, Plaintiffs would also have to allege sufficient facts to plausibly support the notion that the ViSalus Defendants *knew or should have known* that those communications had been unlawfully intercepted.  *See Skipprint, LLC v. Rastar, Inc.*, 2013 WL 4430873, at*3 (D. Utah Aug. 16, 2013) (conclusory statements as to defendant's knowledge are insufficient to survive a 12(b)(6) motion to dismiss under Iqbal and Twombly); *Stern v. Charles Schwab & Co., Inc.*, 2010 WL 1250732 (D. Ariz. Mar. 24, 2010) (same; also noting that in the context of defendant's knowledge, a court must consider the factual allegations in the complaint to determine if they plausibly suggest an entitlement to relief) (unpublished).  Here, Plaintiffs merely allege that ViSalus hired the P.I. Firm.  There are no facts pleaded to plausibly support the notion that Visalus knew or had reason to know that any information it received and purportedly used was unlawfully intercepted.

### 2.    Plaintiffs' state wiretapping claim fails for the same reasons.

The state wiretapping claim should be dismissed for all the same reasons as the Federal Wiretap Act claim.  No Utah courts have construed the state law with respect to these issues (e.g., secondary liability, definition of "interception", etc.).  The state law is virtually identical to

the federal law, so there is no reason for inconsistent results or inconsistent construction.  Where Utah statutes are "virtually identical" to federal counterparts, and are based on them, "the construction placed on the federal statute is persuasive authority in construing Utah's statute, and the construction of Utah's statute must be consistent with federal law."  *Antillon v. Dep't of Employment Sec.*, 688 P.2d 455, 457 (Utah 1984); *Brixen & Christopher Architects, P.C. v. State*, 29 P.3d 650, 661 (Utah Ct. App. 2001) ("Although no Utah case has evaluated the elements of a civil antitrust violation under the Utah Antitrust Act, we look to "interpretations given by the federal courts to comparable federal antitrust statutes and by other state courts to comparable state antitrust statutes").

    **C.**    <u>The Complaint Fails To Allege Actionable Civil Racketeering Claims Under Federal or Utah Law (Counts Three, Four, Five, Six and Twelve).</u>

    **1.**    **Plaintiffs fail to plead a pattern of racketeering activity for which they have standing to sue under 18 U.S.C. § 1964(c).**

Plaintiffs assert four claims for relief under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and one claim for relief under the Utah analogue, the Pattern of Unlawful Activity Act, Utah Code Ann. § 76-10-1601 *et seq*.  Counts Three and Four purport to allege claims for primary RICO violations of 18 U.S.C. § 1962(c).  Count Five alleges a conspiracy in violation of 18 U.S.C. § 1962(d) to commit the primary RICO violation alleged in Count Three.  Count Six alleges a RICO conspiracy to commit the primary violation asserted in Count Four.  And Count Twelve asserts the bare outline of a claim under the Utah Pattern of Unlawful Activity Act.  For the reasons discussed below, all five of these claims fail to state a viable cause of action and should be dismissed.

RICO Section 1962(c) makes it illegal "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of

racketeering activity. . . ." 18 U.S.C. § 1962(c). Thus, to plead a violation of Section 1962(c), "a civil RICO claim must allege the defendants (1) participated in the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Tal v. Hogan*, 453 F.3d 1244, 1269 (10th Cir. 2006).

Moreover, standing to assert a civil RICO claim is governed by RICO Section 1964(c), which allows "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter [to] sue therefor in any appropriate United States district court and . . . recover threefold the damages he sustains and the cost of suit, including a reasonable attorney's fee. . . ." 18 U.S.C. § 1964(c). "Thus, . . . standing for private individuals under RICO requires a plaintiff to have been 'injured in his business or property by the conduct constituting the violation.'" *Tal*, 453 F.3d at 1254 (quoting *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).

Counts Three and Four both allege the same collection of purported RICO "predicate acts": (a) interception of electronic communications in violation of 18 U.S.C. § 2511 and Utah Code Ann. § 77-23a-4; (b) "malicious cyber activity" under Utah Code Ann. § 13-5a-102 *et seq*.; (c) the alleged break-in at Ocean Avenue's office and theft of a computer; (d) defamation of plaintiffs and others; (e) extortion of current and former ViSalus distributors; and (f) mail fraud, in violation of 18 U.S.C. § 1341, and wire fraud, in violation of 18 U.S.C. § 1343, directed at prospective and new ViSalus distributors. (*See* Compl. ¶¶ 191, 196-97, 205-06).

As defined in 18 U.S.C. § 1961(1), "racketeering activity" includes only criminal acts. As a result, alleged tortious conduct involving defamation and unfair competition through "malicious cyber activity" under Utah Code Ann. § 13-5a-101 *et seq*. does not constitute "racketeering activity." *See, e.g., Marks v. City of Seattle*, No. C03–1701, 2003 WL 23024522

*6 (W.D. Wash. Oct. 16, 2003) (pointing out that civil allegations, such as defamation, do not constitute "racketeering activity" under RICO Section 1961(1)) (unpublished).

Moreover, RICO Section 1961(1) specifies the federal crimes that constitute "racketeering activity," and interception of electronic communications in violation of 18 U.S.C. § 2511 is not one of the criminal violations listed.  *See* 18 U.S.C. § 1961(1)(B)-(G).  Subpart (A) of RICO Section 1961(1) limits state law crimes that would constitute "racketeering activity" to "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter or dealing in a controlled substance . . . which is chargeable under state law and punishable by imprisonment for more than one year."   18 U.S.C. § 1961(1)(A).  Interception of electronic communications in violation of Utah Code Ann. § 77-23a-4 does not fall under any of the categories of state law crimes that would constitute "racketeering activity."  Similarly, the alleged break-in at Ocean Avenue's office and theft of its computer would not constitute any of the state law crimes included within the definition of "racketeering activity."

That leaves Plaintiffs' allegations of federal mail fraud, federal wire fraud, and extortion, all of which do fall within the statutory definition of "racketeering activity."   When, as here, RICO claims are asserted based on alleged predicate acts of mail and wire fraud, those allegations must be pleaded with particularity under Rule 9(b).  *Cook v. Zions First Nat'l Bank*, 645 F. Supp. 423, 425 (D. Utah 1986).  That requires such details as the time, place and content of the alleged mail or wire transmissions, and, because fraud is alleged against multiple defendants, those details must be set forth with respect to each defendant.  *Id*. at 424-25.  The Complaint fails to plead a "pattern" (defined at 18 U.S.C. § 1961(5) as requiring at least two acts of "racketeering activity") of mail and/or wire fraud against each of the ViSalus Defendants with the particularity required by Rule 9(b).

But the lack of particularity is the least of Plaintiffs' problems with their mail fraud and wire fraud allegations. Plaintiffs do not, and cannot, claim that they were the direct victims either of the alleged acts of fraud or the alleged acts of extortion. Indeed, Plaintiffs contend that the alleged fraud was directed *not* at them but at "new ViSalus distributors" who were supposedly deceived "about the ability to earn and maintain commissions and certain levels of success within ViSalus without [being told about] the internal manipulation of the system that created false expectations." (*See* Compl. ¶ 196). Plaintiffs do not and cannot contend that they were among the "new ViSalus distributors" at whom the alleged fraud was directed.

Similarly, Plaintiffs contend that the alleged acts of extortion were directed *not* at them but at current and former ViSalus distributors who are not parties to this action. When detailing the alleged "racketeering activity" that forms the predicates for their RICO claims, Plaintiffs allege that "Defendants also engaged in threats of extortion as that term is understood under Utah and Florida law as it related to obtaining valuable promises by Plaintiffs [sic] Ms. Then, Mr. Then, Ms. Nile, Mr. Knox, Ms. Van Etten and Ms. Bohn through use of threats and intimidation." (*See* Comp. ¶ 196). Of course, none of those individual targets of the alleged extortion is a party to this lawsuit.

As discussed above, "a plaintiff has standing to bring a RICO claim only if he was injured in his business or property by reason of the defendant's violation of § 1962." *Gillmor v. Thomas*, 490 F.3d 791, 797 (10th Cir. 2007) (quoting *Deck v. Engineered Laminates*, 349 F.3d 1253, 1257 (10th Cir. 2003)). An injury to business or property requires a concrete financial loss, and not just injury to a business expectancy. *See Ivar v. Elk River Partners, LLC*, 705 F. Supp. 2d 1220, 1232-33 (D. Colo. 2010).

Here, Plaintiffs allege no facts demonstrating plausibly that they, in fact, incurred a concrete financial loss as a result of any alleged fraud or extortion directed at third parties. This deficiency alone deprives Plaintiffs of standing to assert their RICO claims. *See, e.g.*, *Ironworkers Local Union 68 v. AstraZeneca Pharm., LP*, 634 F.3d 1352, 1369 (11th Cir. 2011) (affirming dismissal of federal RICO claims where plaintiffs "have not alleged facts suggesting that they plausibly suffered economic injury caused by [defendants'] false representations").

But even if Plaintiffs had asserted facts demonstrating plausibly that they suffered a concrete financial loss to their business or property as a result of the alleged acts of fraud or extortion directed at third parties, they would still lack standing to sue under RICO Section 1964(c). In *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268 (1992), the U.S. Supreme Court explained that to state a claim under civil RICO, a plaintiff must show that a RICO predicate offense (e.g., mail fraud, extortion, etc.) "not only was a 'but for' cause of his injury, but was the proximate cause as well." For a civil RICO claim, proximate cause requires "some direct relation between the injury asserted and the injurious conduct alleged." *Id.* A causal link that is "too removed," "purely contingent," or "indirect[t]" is not enough. *Id.* at 271, 274. "[I]n the RICO context, the focus is on the directness of the relationship between the conduct and the harm." *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 12 (2010).

Here, the direct victims of the alleged acts of mail fraud, wire fraud and extortion are either current or former ViSalus distributors – *not* Plaintiffs. Plaintiffs do not and cannot demonstrate a direct causal link between these alleged predicate acts of racketeering and any concrete financial loss to Plaintiffs' business or property. As a result, Plaintiffs lack standing to assert a civil RICO claim for any such alleged harm. *See, e.g.*, *Hamm v. Rhone-Poulenc Rorer Pharm., Inc.*, 187 F.3d 941, 952 (8th Cir. 1999) (affirming dismissal of civil RICO action where

plaintiffs were not the intended targets of the racketeering activity); *Mayfield SWD, LLC v. Blevins*, No. CIV–10–0467–HE, 2011 WL 195656 *4 (W.D. Okla. Jan. 19, 2011) (dismissing civil RICO action based on predicate acts of bribery where "[p]laintiffs were not the direct victims") (unpublished); *Marlow v. Allianz Life Ins. Co. of North America*, No. 08–cv–00752–CMA–MJW, 2009 WL 1328636 at *7-8 (D. Colo. May 12, 2009) (dismissing civil RICO claim based on predicate acts of mail and wire fraud where plaintiff, a competitor of defendant, was not an immediate victim of fraud scheme involving sales of annuities to senior citizens) (unpublished).  Counts Three and Four should therefore be dismissed in their entirety.

> ### 2. Plaintiffs' failure to plead actionable claims under RICO section 1962(c) defeats their RICO conspiracy claims under section 1962(d).

As discussed above, Count Five purports to assert a conspiracy to commit the violation of Section 1962(c) alleged in Count Three.  And Count Six asserts a conspiracy to commit the violation of Section 1962(c) alleged in Count Four.  A conspiracy to violate one of the first three subsections of Section 1962 is a violation of Section 1962(d).  18 U.S.C. § 1962(d).

A RICO conspiracy claim fails if the primary RICO violation upon which it is based lacks merit.  *See, e.g., Tal*, 453 F.3d at 1270 (noting that because plaintiff had stated "no viable claim under §1962(a),(b) or (c), then its subsection (d) conspiracy claim fails as a matter of law."); *Allbright v. Attorney's Title Ins. Fund*, 504 F. Supp. 2d 1187, 1209 (D. Utah 2007) ("Because the Court has determined that plaintiffs' substantive RICO claims are without merit, the plaintiffs' conspiracy claims under 18 U.S.C. § 1962(d) and U.C.A. § 76-10-1603(4) also fail.").  Accordingly, because the claims of primary RICO violations of Section 1962(c) are defective and should be dismissed, the RICO conspiracy claims in Counts Five and Six should also be dismissed.

3.      **Plaintiffs provide no facts demonstrating a plausible claim under the Utah Pattern Of Unlawful Activity Act.**

Count Twelve purports to assert a cause of action under the Utah Pattern of Unlawful Activity Act ("PUAA"), Utah Code Ann. § 76-10-1601 *et seq*. Plaintiffs' claim is stated in three sentences that simply parrot the statutory language. (*See* Compl. ¶¶ 255-57).

Among other defects, the PUAA claim fails to specify the "unlawful activity" that constitutes the alleged "pattern" for Plaintiffs' claim. Plaintiffs fail to plead any facts demonstrating how each Defendant committed an actionable violation. They fail to plead any facts demonstrating plausibly that any such violation caused Plaintiffs to suffer a compensable injury. And they even fail to say which of the four subparts of Utah Code Ann. § 76-10-1603 they are suing under. It bears repeating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Count Twelve should be dismissed.

D.      **The Complaint Fails to State a Claim Under the Utah Unfair Competition Act (Count Seven).**

1.      **Plaintiffs fail to adequately allege "material diminution in value of intellectual property."**

To state a claim under the Utah Unfair Competition Act (the "UCA"), a plaintiff must allege "an intentional business act or practice that . . . is unlawful, unfair or fraudulent; and . . . leads to a *material diminution in value of intellectual property*;" and involves one of several enumerated offenses, including "malicious cyber activity." Utah Code Ann. § 13-5a-102(4).

In support of the required "material diminution" element, Plaintiffs allege only that "Defendants [sic] violation of the Utah Unfair Competition Act has led to diminishing the value of Ocean Avenue's intellectual property and has damaged the Plaintiffs in an amount to be proven at trial." (Compl. ¶ 229). Plaintiffs do not identify *what* intellectual property has been

materially diminished in value; nor do Plaintiffs state even in conclusory fashion *how* any defendant's conduct led to material diminution in value of any intellectual property.[3]  (*See id.*)

Under *Iqbal* and *Twombly*, Plaintiffs' "naked assertion" of material diminution in value is not enough to state a claim.  *Rich Media Club, LLC v. Mentchoukov*, No. 2:11-CV-1202 TS, 2012 WL 1119505 *4 (D. Utah April 3, 2012) (dismissing UCA claim because plaintiff's conclusory assertion that "Defendants' conduct as alleged herein has, upon information and belief, led to a material diminution in the value of Rich Media's intellectual property" was insufficient under *Iqbal* and *Twombly*.) (unpublished).  Count Seven must be dismissed in its entirety.

### 2. Plaintiffs fail to allege sufficient facts to state a claim based on vicarious liability.

Plaintiffs allege that Defendant Moser, the PI Firm or hackers hired by the PI Firm engaged in "malicious cyber activity," violating the UCA by accessing computers, phones and email accounts owned by Plaintiffs Ocean Avenue, Dunn and Ninow, as well as by Ocean Avenue distributors who are not parties to this action.[4]  (Compl. ¶¶ 33, 37-39, 43, 44, 47, 50, 57).  Plaintiffs do not allege that the ViSalus Defendants personally did any of these things; Plaintiffs'

---

[3] Elsewhere in the Complaint, Ocean Avenue alleges that Defendants *planned* to harm Ocean Avenue's business by crashing Ocean Avenue's computer system.  (*See, e.g.,* Compl. ¶ 53).  But Ocean Avenue does not allege Defendants *succeeded* in those plans, and in any event, Ocean Avenue's computer system is a physical asset, not intellectual property.  Ocean Avenue also alleges Defendants obtained and used confidential information to intimidate Ocean Avenue's distributors.  (Compl. ¶¶ 45-46).  But, again, Ocean Avenue does not allege that Defendants' conduct diminished the value of the information at issue, much less that the information rose to the level of intellectual property.

[4] "Malicious cyber activity" is defined under the UCA by reference to several similar offenses including "the unlawful use of computing resources," "accessing a computer without authorization," and "intend[ing] to defraud or materially cause damage or disruption to any computing resources."  Utah Code Ann. § 13-5a-102(3)(a)-(d).

claim against the ViSalus Defendants seeks to hold each of them vicariously liable for the alleged conduct of others.

Under well-established Utah law, "an employer is not liable to third persons for the torts of an independent contractor" unless the employer retains control over the *means* by which the contractor performs his work. *Price v. Smith's Food & Drug Centers, Inc.*, 252 P.3d 365, 371 (Utah Ct. App. 2011); *Gonzalez v. Russell Sorensen Const.*, 279 P.3d 422, 427-28 (Utah Ct. App. 2012) ("The doctrine of retained control is applied narrowly in *unique circumstances* . . . when the employer . . . exerts such control over the means utilized that the contractor cannot carry out the injury-causing aspect of the work in his or her own way.") (emphasis in original) (internal quotation marks omitted).[5]

Because Plaintiffs allege that Moser, the PI Firm and the hackers are, at most, independent contractors, and Plaintiffs fail to allege that the ViSalus Defendants retained control over the means by which Moser, the PI Firm and the hackers performed their work, Plaintiffs fail to allege facts sufficient to trigger vicarious liability. Plaintiffs allege that Moser is an employee and co-founder of the PI Firm, that the PI Firm is an independent company, and that the PI Firm – not the ViSalus Defendants – hired hacker consultants and told them what to do. (*See* Compl. ¶¶ 12-14, 33, 50). While Plaintiffs allege that ViSalus and Mr. Sarnicola hired Moser and the PI Firm (for the perfectly lawful purpose of "obtain[ing] information about Ocean Avenue, its owners, and distributors" (Compl. ¶ 53)), Plaintiffs fail to allege that the ViSalus Defendants told Moser or the PI Firm *how* to perform their work, much less retained control of the means by

---

[5] The rule barring vicarious liability for acts of an independent absent "retained control" is the same in every state whose laws might apply, including Delaware (under whose laws ViSalus is incorporated), Michigan (home of ViSalus's principal place of business), or California (under whose laws Plaintiffs allege the P.I. Firm is incorporated). *See Fisher v. Townsends, Inc.*, 695 A.2d 53, 58 (Del. 1997); *Candelaria v. BC Gen. Contractors, Inc.*, 600 N.W.2d 348, 352 (Mich. Ct. App. 1999); *Lynn v. Superior Court*, 225 Cal. Rptr. 427, 428 (Ct. App. 1986).

which Moser or the PI Firm performed their work.  Accordingly, it is immaterial whether Moser,

the PI Firm or its alleged hackers committed the alleged offenses for the benefit of the ViSalus

Defendants in the course of performing their work.  Without factual allegations demonstrating

plausibly that the ViSalus Defendants "exert[ed] such control over the means utilized" that

Moser, the PI Firm or the hackers could not "carry out the injury-causing aspect of the work in

[their] own way," there can be no vicarious liability.  *Gonzalez*, 279 P.3d at 427-28; *Price*, 252

P.3d at 371.  For this independent reason, Count Seven must be dismissed as to ViSalus, Mr.

Mallen and Mr. Sarnicola.

**E.**    **The Complaint Fails to State a Claim Under the Utah Truth In Advertising Act (Count Nine).**

Under the plain language of the Utah Truth In Advertising Act (the "TIAA"), a plaintiff

cannot maintain an action for injunctive relief unless the plaintiff first "gives notice of the

alleged violation to the prospective defendant and provides the prospective defendant an

opportunity to promulgate a correction notice by the same media as the allegedly violating

advertisement."  Utah Code Ann. § 13-11a-4(2)(a).  Plaintiffs seek injunctive relief in their

claim under the TIAA, but fail to allege that they gave *any* Defendant this required notice (much

less gave notice to *all* Defendants). [6]  (*See* Compl. ¶ 238).  Accordingly, Plaintiffs cannot

maintain their claim under the TIAA and Count Nine must be dismissed.  *Blackmore v.*

*Wachovia Mortgage Corp.*, 2:12-CV-250-DN, 2013 WL 504388 *3 (D. Utah Feb. 8, 2013)

(dismissing TIAA claim "because Plaintiff does not allege he provided notice to Defendants

before filing this lawsuit, as he was required to do under the Utah Truth in Advertising Act.")

(unpublished).

---

[6] Whether or not Plaintiffs *actually* gave notice to any Defendant is immaterial for purposes of this motion because Plaintiffs fail to *allege* they gave notice.

Nor can Plaintiffs avoid dismissal by limiting their claim to damages alone, dropping their request for injunctive relief to get around the pre-suit notice requirement.  First, the TIAA, "by its plain language, does not allow a plaintiff to sue for damages alone;" the plaintiff *must* seek injunctive relief to maintain an action under the TIAA.  *Szuminski v. Provo Steel & Supply Co.,* No. 040402260, 2005 WL 5958007, *3 (D. Utah Feb. 22, 2005) (unpublished).  Second, because the TIAA requires the court to issue an injunction upon finding a violation, all actions under the TIAA seek injunctive relief, whether or not the plaintiff specifically requests it. *Proctor & Gamble Co. v. Haugen*, 947 F. Supp. 1551, 1555-56 (D. Utah 1996); *see also* Utah Code Ann. §13-11a-4(2)(a)-(b) (stating that if the court finds a violation, "it *shall* enjoin the defendant from continuance of the violation" and providing that the plaintiff is entitled to recover actual damages "in addition to injunctive relief").

F.      **The Complaint Fails to State a Claim Against the ViSalus Defendants for Trespass, Conversion and Theft (Count Ten).**

Plaintiffs allege that *Moser* entered Ocean Avenue's offices without authorization and stole a computer.  (Compl. ¶¶ 47, 240-241).  Plaintiffs do not allege that *the ViSalus Defendants* committed any trespass, conversion or theft, or even that the ViSalus Defendants instructed or directed Moser to break in and steal a computer, much less that the ViSalus Defendants retained control over the means Moser allegedly used to obtain information about Ocean Avenue. (Compl. ¶ 47-49).  Because Plaintiffs allege that Moser worked as an independent contractor for ViSalus and Mr. Sarnicola (*see* Compl. ¶¶ 12-14, 53), Plaintiffs have failed to allege sufficient facts to state a claim based on vicarious liability.  *Price*, 252 P.3d at 371; *Gonzalez*, 279 P.3d at 427-28.  Count Ten must be dismissed as to the ViSalus Defendants.

**G.     The Complaint Fails to State a Claim Against the ViSalus Defendants for Defamation (Counts Thirteen and Sixteen).**

"To state a claim for defamation, a plaintiff must show that the defendant published statements concerning the plaintiff; that the statements were false, defamatory, and not subject to any privilege; that the statements were published with the requisite degree of fault; and that their publication resulted in damage."   *Farm Bureau Life Insurance Co. v. American National Insurance Co.*, 505 F. Supp. 2d 1178, 1191 (D. Utah 2007).

Unless the plaintiff states a claim for defamation *per se*, the plaintiff must also allege special damages to the plaintiff's reputation that were the actual and natural result of the defamatory language used.   *Computerized Thermal Imaging, Inc. v. Bloomberg, L.P.*, 312 F.3d 1292, 1297-1298 (10th Cir. 2002); *See Farm Bureau*, at 1191-1192.   Special damages "[m]ust be specific, actual, and non-speculative; it is insufficient for a plaintiff to allege that defamation caused a "negative impact" on business dealings with third parties.   *Computerized Thermal Imaging, Inc.*, 312 at 1298-1299.

To state a claim for defamation *per se* and avoid the special damages pleading requirement, a plaintiff must allege either a false written statement (libel) "that from its nature must, or presumably will as its natural and proximate consequence, cause pecuniary loss to the person about whom the statement is made," or a false oral statement (slander) that "falls into one of four categories: (1) charge of criminal conduct; (2) charge of a loathsome disease; (3) charge of conduct that is incompatible with the exercise of a lawful business, trade, profession, or office; and (4) charge of unchastity of a woman."   *Farm Bureau*, 505 F. Supp. 2d at 1192 (discussing the elements of libel *per se* and slander *per se*, the two types of defamation *per se*).

Plaintiffs' defamation and business defamation claims against the ViSalus Defendants must be dismissed for two reasons:  (1) Plaintiffs fail to adequately plead that *these defendants*

25

made false statements, and (2) Plaintiffs fail to plead any special damages and fail to state a claim for defamation *per se*.

Plaintiffs allege three categories of statements in support of their defamation claims:  (1) statements made by others, *not* the ViSalus Defendants; (2) statements about people who are not Plaintiffs; and (3) unspecified "defamatory" statements.

The first category – statements made by others – include the following:

(1)     Moser posted a video on YouTube that "[c]ontained statements giving the false impression that Dunn is a 'professional liar', he 'steals from people' and he 'gives you permission to steal.'"  (Compl. at ¶ 55).

(2)     Mr. and Mrs. Parr made defamatory statements about Ocean Avenue and its management team.  (Compl. ¶¶ 100, 102).

(3)     "Other downline distributors of Mr. Then, Ms. Nile and/or Ms. Then" made disparaging comments about Ocean Avenue.  (Compl. at ¶ 82).

(4)     "Other ViSalus ambassadors" sent defamatory text messages and emails about Ocean Avenue.  (Compl. at ¶ 138).

Plaintiffs do not allege that the ViSalus Defendants made these statements.  Nor do Plaintiffs allege that the ViSalus Defendants authorized these people to make the statements on their behalf, instructed these people to make any statements at all, or controlled the means by which any of these people performed any general work they did for ViSalus.  As a result, Plaintiffs have failed to allege sufficient facts to trigger vicarious liability and claims based on these statements must be dismissed as to the ViSalus Defendants.  *Price*, 252 P.3d at 371; *Gonzalez*, 279 P.3d at 427-28.

The second category of statements includes statements made about non-parties Mr. Knox, Ms. Then, Mr. Then, Ms. Nile, Ms. Van Etten, Ms. Bohn and other unidentified former ViSalus distributors who have joined Ocean Avenue.  (Compl., ¶¶ 82, 102, 107, 113, 137 and 260). Because statements about non-parties are not "statements concerning *the plaintiff*," Plaintiffs have failed to allege sufficient facts to state a claim based on these statements.  *Farm Bureau*, 505 F. Supp. 2d at 1191 ("To state a claim for defamation, a plaintiff must show that the defendant published statements concerning *the plaintiff*.").

The third category – unidentified "defamatory" statements – are alleged only in the most generic, conclusory fashion.  For example, Plaintiffs allege that the ViSalus Defendants created "websites that contain defamatory and false statements concerning Ocean Avenue, Ninow and Dunn and their business ethics, business operations, and conduct that is allegedly dishonest or incompatible with the operations of a lawful business."  (Compl. at ¶¶ 56, 78, 79, 82, 102, 138, 139, 260, 262, 277).  For each of these allegedly "defamatory" statements, Plaintiffs fail even to paraphrase what the ViSalus Defendants supposedly said.  (*Id.*)  Such conclusory allegations are insufficient to state a claim.  Plaintiffs cannot survive a motion to dismiss by relying on a formulaic recitation of the elements of a cause of action and "naked assertions" such as "defendant made defamatory statements."  *Iqbal*, 556 U.S. 662 at 678, *Twombly*, 550 U.S. at 570.

Moreover, because their claims are based on such conclusory allegations, Plaintiffs have failed to state a cause of action for defamation *per se* and are not entitled to a presumption of injury without pleading special damages.  To plead defamation *per se*, Plaintiffs would have had to allege the substance of a statement that meets the tests for either libel *per se* or slander *per se*. *Farm Bureau*, 505 F. Supp. 2d at 1192.  Plaintiffs cannot simply allege in conclusory fashion

that the statements at issue fall into one of the categories for slander *per se* without alleging the substance of the statement. *See Baum v. Gillman*, 667 P.2d 41, 43 (Utah 1983) (analyzing *substance* of alleged statements on motion to dismiss to determine whether plaintiff had adequately pleaded slander *per se*).

Having failed to state a claim for defamation *per se*, Plaintiffs had to plead special damages. Not only have they failed to do so, but they have affirmatively alleged that Ocean Avenue has *not* lost distributors, notwithstanding alleged publication of defamatory statements intended to deter distributors from leaving ViSalus to join Ocean Avenue. (Compl. at ¶ 269). For this independent reason, Counts Thirteen and Sixteen must be dismissed.

### H.  **The Complaint Fails to State a Claim Against the ViSalus Defendants for Civil Conspiracy (Counts Eleven, Fourteen and Seventeen).**

#### 1.  **Count Eleven must be dismissed.**

Plaintiffs allege three separate conspiracies in Count Eleven:  (1) conspiracy to violate the Utah Unfair Competition Act ("UCA"), (2) conspiracy to intercept communications, and (3) conspiracy to commit trespass, conversion and theft.

The first claim – conspiracy to violate the UCA – must be dismissed because Plaintiffs fail to adequately plead an underlying violation of the UCA as explained above. *Puttuck v. Gendron*, 199 P.3d 971, 978 (Utah Ct. App. 2008) (Because "[t]he claim of civil conspiracy requires, as one of its essential elements, an underlying tort," a conspiracy claim must be dismissed if the plaintiff fails to adequately plead the underlying tort on which it relies).

The second claim – conspiracy to intercept communications – must be dismissed because neither the Federal Wiretap Act nor the Utah Wiretap Act provide private causes of action for liability based on civil conspiracy. *See, e.g.*, *Gaubatz*, 891 F. Supp. 2d at 24-27; *Kirch*, 702 F.3d at 1247.

The third claim – conspiracy to commit trespass, conversion and theft – must be dismissed because Plaintiffs fail to include factual allegations demonstrating plausibly that there was "a meeting of the minds" between Moser, the alleged trespasser, and the ViSalus Defendants to accomplish an unlawful objective or a lawful objective by unlawful means. *Israel Pagan Estate v. Cannon*, 746 P.2d 785, 790-792 (Utah Ct. App. 1987) (holding to prove civil conspiracy, plaintiff must establish "a meeting of the minds" between co-conspirators intending to accomplish an unlawful objective or a lawful objective by unlawful means); *see also Unified Container, LLC v. Mazuma Capital Corp.*, 280 F.R.D. 632, 637 (D. Utah 2012).

With respect to the objective, Plaintiffs allege that ViSalus and Mr. Sarnicola hired Moser and the PI Firm for the perfectly lawful purpose of "obtain[ing] information about Ocean Avenue, its owners, and distributors," (Compl., ¶ 53) and the equally lawful purpose of competing with Ocean Avenue, (Compl., ¶ 252). *Overstock.com, Inc. v. SmartBargains, Inc.*, 192 P.3d 858, 865 (Utah 2008) ("Competition is not an improper purpose . . . "); *Leigh Furniture & Carpet Co. v. Isom*, 657 P.2d 293, 307 (Utah 1982) ("In the rough and tumble of the marketplace, competitors inevitably damage one another in the struggle for personal advantage. The law offers no remedy for those damages – even if intentional – because they are an inevitable by-product of competition."); *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 201 (Utah 1991) ("An immediate intent to injure a competitor may be motivated and outweighed by a legitimate long-range interest in furthering one's own economic condition.").

With respect to the means, Plaintiffs allege only that Moser entered Ocean Avenue's offices without authorization and stole a computer. (Compl., ¶¶ 47, 240-241). Plaintiffs do *not* allege that Moser and the ViSalus Defendants *agreed* that Moser would break into Ocean

Avenue and steal a computer.  Nor do Plaintiffs allege that the ViSalus Defendants *directed* Moser to trespass and steal a computer.

Because their allegations just as reasonably suggest that the relationship between Visalus and Moser was entirely lawful, Plaintiffs fail to nudge the existence of the alleged conspiracies to commit trespass, conversion and theft "across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570 (holding that the facts alleged in the matter before the Court were more likely explained by lawful independent goals which did not constitute a conspiracy, and that as such, Plaintiffs did not plausibly suggest an unlawful agreement).  Count Eleven must be dismissed in its entirety.

### 2.     Counts Fourteen and Seventeen must be dismissed.

Plaintiffs' claims for conspiracy to commit defamation and conspiracy to commit business defamation must be dismissed because Plaintiffs fail to adequately plead the underlying defamation offense, as explained above.  *Puttuck*, 199 P.3d at 978 (conspiracy claim must be dismissed if the plaintiff fails to adequately plead the underlying tort on which it relies).

Further, these claims must be dismissed because Plaintiffs again fail to allege facts demonstrating "a meeting of the minds" between the ViSalus Defendants, on the one hand, and the PI Firm, Moser, Siragusi and ViSalus's independent distributors and ambassadors, on the other hand, to defame Plaintiffs.  *Israel Pagan Estate*, 746 P.2d at 790-792 (civil conspiracy requires "a meeting of the minds" between co-conspirators to accomplish an unlawful objective or a lawful objective by unlawful means).

### I.     The Complaint Fails to State a Claim for Tortious Interference with Contractual and Business Relations (Count Fifteen).

To state a claim for tortious interference with contractual and business relations, a plaintiff must allege:  (1) that the defendant intentionally interfered with the plaintiff's existing

or potential economic relations, (2) for an improper purpose or by improper means, (3) causing injury to the plaintiff. *Leigh Furniture*, 657 P.2d at 304.

Plaintiffs' claim must be dismissed because Plaintiffs fail to adequately plead injury. The sum total of Plaintiffs' injury allegation is that ViSalus's tortious interference has "[a]ctually disrupted Ocean Avenue's relationship with Ms. Then, Ms. Nile and Mr. Then." (Compl. ¶ 274). Under *Iqbal* and *Twombly*, this "naked assertion" of injury is not enough to state a claim, particularly because Plaintiffs allege that the Thens and Ms. Nile resigned from ViSalus, joined Ocean Avenue and remain with Ocean Avenue today, notwithstanding ViSalus's alleged threats and attempts to interfere. (Compl. ¶¶ 93, 97, 269). Plaintiffs do not allege that ViSalus caused the Thens or Ms. Nile to breach any contractual obligation to Ocean Avenue. Nor do Plaintiffs allege that ViSalus's conduct caused Ocean Avenue to breach contracts with the Thens or Ms. Nile. Without additional information regarding how Ocean Avenue's relationship has been "disrupted," Plaintiffs' conclusory injury allegation is not sufficient to sustain a cause of action.

**J.** **The Complaint Fails to State a Claim Under the Utah Unfair Practices Act (Count Eighteen).**

Plaintiffs' claim under the Utah Unfair Practices Act ("UPA") must be dismissed because Plaintiffs fail to allege any conduct that might violate the UPA, a price discrimination statute designed to prevent the creation of monopolies.[7] *See* Utah Code Ann. § 13-5-3. The UPA makes it unlawful "for a person engaged in commerce . . . to discriminate in price between different purchasers" if the effect of the discrimination is to substantially lessen competition or

---

[7] In the heading for Count Eighteen, Plaintiffs mis-cite the statutory reference for the Utah Unfair Practices Act as § 13-15-1, et seq., not § 13-5-1, et seq. (Compl. P. 58). Section 13-15-1 is the Business Opportunity Disclosure Act ("BODA"). To the extent Plaintiffs intended to state a claim under BODA, that claim must be dismissed because BODA does not provide for a private right of action; only the attorney general and the Division of Consumer Protection can enforce BODA. § 13-15-3.

create a monopoly.  *Id.*  Because the Complaint is devoid of any allegation that any Defendant engaged in price discrimination, much less that any Defendant's pricing practices had the effect of substantially reducing competition, Plaintiffs' claim under the UPA must be dismissed.[8]

## III.   **CONCLUSION**

For the foregoing reasons, the ViSalus Defendants respectfully request that the Court dismiss Counts One through Seven and Counts Nine through Eighteen of Plaintiffs' Complaint with prejudice.

---

[8] As with other claims, Plaintiffs fail to specify which acts give rise to its claim under the UPA, preferring instead to simply incorporate by reference the preceding 58 pages of the Complaint, containing over 280 paragraphs of allegations, any of which might relate to the acts about which Plaintiffs complain.  (Compl., ¶ 286).

Respectfully submitted this 6th day of January, 2014.

_____/s/ John W. Mackay_____

John Mackay (6923)
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suit 1400
Salt Lake City, UT 84111
Telephone:  801-323-3341

James A. Ryan (admitted *pro hac vice*)
Kevin D. Quigley (admitted *pro hac vice*)
Brian A. Howie (admitted *pro hac vice*)
QUARLES & BRADY LLP
One Renaissance Square
Two North Central Avenue
Phoenix, AZ 85004-2391
Telephone:  602-229-5200

Attorneys for Defendants ViSalus, Inc., Blake
Mallen and Nicholas Sarnicola

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of January, 2014, a true and correct copy of the

foregoing **MOTION TO DISMISS CLAIMS AGAINST VISALUS, SARNICOLA AND**

**MALLEN** was electronically filed with the Clerk of the Court using the Utah Trial Court/ECF

system which sent notification of such to the following:

> Cameron M. Hancock
> Gregory S. Moesinger
> KIRTON MCCONKIE
> Kirton McConkie Building, 4th Floor
> 50 East South Temple
> Salt Lake City, UT  84145

/s/ Dawn E. Bouvier

1266100

34